## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **CHRISTOPHER WILLIAMS,** )<br>201 I St SW Apt 526 )<br>Washington, DC 20024 )<br> )<br>Plaintiff, )<br> )<br>v. )<br> )<br>**UNIVERSITY OF MARYLAND** )<br>**COLLEGE PARK** : )<br>College Park, MD 20742 )<br>Serve: Dereck E. Davis, Treasurer : )<br>80 Calvert Street : )<br>Annapolis, Maryland 21401 : )<br>Serve : Michael R. Poterala, Attorney General : )<br>4716 Pontiac Street : )<br>Room 2117 Seneca Bldg : )<br>College Park, MD 20742 : )<br>: )<br>Darryll Pines : )<br>Office of the President : )<br>University of Maryland : )<br>1101 Main Administration Bldg. : )<br>7901 Regents Drive : )<br>College Park, MD 20742-5025 : )<br>: )<br>and )<br>: )<br>Bradley O. Boekeloo : )<br>University of Maryland : )<br>School of Public Health: 4200 Valley Dr. )<br>Department of Behavioral and Community : )<br>Health, College Park, MD 20742 : )<br> )<br>Defendants. ) | Case No._____<br><br>**COMPLAINT** |

## COMPLAINT

COMES NOW the Plaintiff, Christopher M. Williams, respectfully sues the Defendants, University of Maryland College Park, Darryll J. Pines, PhD in his individual capacity, and Bradley O. Boekeloo, PhD in his individual capacity and for cause of action state as follows:

1. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1337, 18 U.S.C. § 1595, 18 U.S.C. § 1962, and 18 U.S.C. § 1964,. This court has supplemental jurisdiction to hear and decide the pendent state law claims under 28 U.S.C. § 1367.

2. The court has personal jurisdiction over Defendants under the 14th amendment to the US Constitution because:

    a) Defendant University of Maryland College Park is a public institution of higher learning

    b) Defendants Darryll Pines and Bradley Boekeloo are University of Maryland College Park or state employees.

    c) Defendant Bradley Boekeloo, acting on behalf of the University of Maryland College Park, used University of Maryland College Park's resources facilities, name, and logo with respect to each of the actions herein described.

3. That the United States District Court for the District of Maryland is the proper venue under 28 U.S.C. § 1391(b) and 18 U.S.C. § 1965 because the events or omissions described in this complaint took place in College Park, MD.

## PARTIES

4. Plaintiff Christopher Williams is a proud descendant of US enslaved families. He lives at 201 I St SW in Washington, DC. He is pursuing a PhD at the University of Maryland at College Park School of Public Health Department of Behavioral and Community Health. He is an artist who paints restorative art of enslaved heroes and engages in fictionalized storytelling for personhood restoration of enslaved families.[1] He is a community leader who initiated in February 2020 an enslaved families restoration day that has blossomed into a major annual community event that has received grant funding. He has also published in national media on enslaved families' personhood restoration.[2] The complaint and counts herein are deeply personal and injurious for him as the descendant of enslaved American families who were into an economic, exploitative system of labor known as slavery. Christopher Williams has identified family members held in captivity by name, including his great-,great-,great-grandfather London Walthall of whom he had a photograph.

5. The Defendant, the University of Maryland, has employed Bradley Boekeloo since 1998 and has entered a labor contract with Plaintiff, Christopher Williams, since August 2019. The University of Maryland College Park Foundation was established in 2000 as a 501(c)(3) non-profit corporation.[3] The University of Maryland College Park is a public research university.[4]

---

[1] www.menvell.com
[2] https://blavity.com/i-use-enslaved-families-and-not-slaves-to-refer-to-my-ancestors-heres-why-you-should-too
[3] https://umcpf.umd.edu/resources/tax-information
[4] https://www.umd.edu/#card-2-about

6. The Defendant, Darryll Pines, is the president of the University of Maryland as well as the Glenn L. Martin Professor of Aerospace Engineering.

7. The Defendant, Bradley Boekeloo, is a Professor in the University of Maryland, Department of Public and Community Health, School of Public Health, College Park, Maryland and Department of Epidemiology and Public Health, University of Maryland School of Medicine, College Park, Maryland (dual appointments).

## FACTUAL BASIS AND STATEMENT OF CLAIM

8. All of the preceding paragraphs are adopted and incorporated herein by reference as if set forth fully herein.

9. In November 2018, Christopher M. Williams applied to the University of Maryland College Park School of Public Health Department of Behavioral and Community Health PhD program.

10. On January 3, 2019, the program extended an offer of admissions.

11. On February 21, 2019, Christopher M. Williams accepted the offer of admissions.

12. Christopher M. Williams signed a contract with the University of Maryland on his teaching assistantship appointment for each academic year since he matriculated in fall 2019. The labor contract stipulated terms and conditions for providing teaching assistantship for 20 hours per week in exchange for a stipend. The terms did not require any compensated labor beyond activities associated with the teaching assistantship.

13. As part of his required doctoral coursework based on the program plan, Christopher Williams enrolled in HLTH 712 in the fall of 2020, for which Bradley O. Boekeloo served as the instructor of record.

14. Bradley O. Boekeloo first notified enrolled students that the syllabus was available on August 28, 2020 for viewing in the online course system.

15. The syllabus contained information on class time, required reading, objectives, competencies, assignments, and topics. The syllabus did not contain information that students will be expected to clean and analyze data, to conduct a literature review, and to prepare a publishable manuscript involving data collected by the University of Maryland Prevention Research Center ("PRC") as part of active federal grant-funded research. PRC is funded by the federal entity - National Center for Chronic Disease Prevention and Health Promotion, Division of Population Health.[1] The CDC is a major operating component of the Department of Health and Human Services.

16. Christopher Williams expected to complete all sixteen assignments for a required course in a degree-seeking program. The Plaintiff was forced to use results from a PRC needs-assessment of LGBT mental health. These assignments covered: A) coding, keying, B) recoding, data management, C) identifying constructs and defining hypotheses, D) a literature review, E) identifying key variables, F) handling missing data G) conducting factor analysis, reliability and validity testing, H) describing independent and dependent variables, I) developing IRB application J) conducting analysis and presenting data, K) additional tables L) data interpretation, M) discussing study

---

[1] https://www.cdc.gov/prc/about-prc-program/index.htm

limitations, N) describing future research, O) identifying journals, P) finalizing manuscript for submission.

17. PRC received $3.75 million over five years from the U.S. Centers for Disease Control and Prevention to study LGBTQ+ mental health.[1] The application funded all resources to complete all aspects of the grants, including data cleaning, analysis, literature reviews, and manuscript writing.

18. Bradley Boekeloo has served as the director of the PRC since 2009.

19. The PRC received federal grant money and relied on a research team of funded positions to collect survey data for the needs-assessment. Data collection was complete by the beginning of fall 2020. Full data analysis and research tasks had not been initiated.

20. Bradley Boekeloo relied on students in his HLTH 712 course during the fall of 2020 to produce publishable manuscripts based on the PRC study results. Christopher Williams was not funded in any fashion through the PRC study or overall PRC grant funding.

21. The research team for this survey included: Bradley Boekeloo, PhD, Jessica Fish, PhD, Barbara Curbow, PhD, Travis Hyams, MPH, and Evelyn King-Marshall, PhD. Funded research assistants provided initial data cleaning and reconciliation. The funding

---

[1] https://www.aspph.org/maryland-prevention-research-center-receives-new-cdc-funding-to-support-lgbtq-mental-health/

for PRC's efforts in LGBTQ+ mental health began in the fall of 2019 and extends through 2024.[1]

22. Bradley Boekeloo required students to provide labor for grant-related activities, including data analysis and manuscript development, although CDC funding for PRC was intended to cover the activities of the grant for paid faculty and staff.

23. Bradley Boekeloo offered students an opportunity to submit their final paper for publication. After the end of the semester, he reiterated that this option was available. He entered into a contract with Christopher Williams both in written and oral communication to enable publication using PRC data wherein his final deliverable could be submitted for publication. Christopher Williams did not have an option on negotiating the value of his labor. Thus, the exchange of labor on grant-related activities for the opportunity to submit for publication was forced and coerced labor, entering Christopher Williams into a non-consenting contract. Bradley Boekeloo did not provide an alternative for completing assignments without using PRC data.

24. On December 22, 2020, Christopher Williams wrote to the department leadership (Bob Gold, PhD, chair, Kathy Sharp, PhD, PhD Program Director, and Kirsten Stoebenau, IRB liaison) raising ethical concerns about use of uncompensated student labor to support an active grant. Drs. Gold and Stoebenau indicated that departmental faculty committees would review this issue. Until the letter on December 22, 2020, the Plaintiff believed that he had no alternatives but to perform labor to support the PRC's federal grant.

---

[1] https://sph.umd.edu/research-impact/research-centers/university-maryland-prevention-research-center/umd-prc-about-us

25. On December 23, 2020, Christopher Williams contacted Bradley Boekeloo to ask about next steps for publication. Bradley Boekeloo did not respond to the request on proceeding with publication. Christopher Williams also mentioned in the same electronic communication that he had "ethical concerns, even legal, with respect to the requirements of this course this semester" and referenced his conversation with the department leadership.

26. The Plaintiff believed that he had no alternative but to perform the coerced, uncompensated labor until December 22, 2020. Following his emails to the department leadership and Bradley Boekeloo, he began to realize the seriousness of legal and ethical implications stemming from the labor exploitation.

27. Christopher Williams submitted all assignments for HLTH 712 throughout the semester. He submitted his final assignment on Dec 22, 2020 12:56pm.

## CAUSES OF ACTION

*"...[T]he Declaration of Independence[] recognizes the inherent dignity and worth of all people. It states that all men are created equal and that they are endowed by their Creator with certain unalienable rights. The right to be free from slavery and involuntary servitude is among those unalienable rights. Acknowledging this fact, the United States outlawed slavery and involuntary servitude in 1865, recognizing them as evil institutions that must be abolished." 22 U.S.C. § 7101(b)(22).*

### COUNT I
### Violation of the 13th Amendment
### Right to be Free from Involuntary Servitude or Forced Labor
### U.S. Const. amend. XIII, § 1
### (Against All Defendants)

28. Defendants collectively required Plaintiff to work without compensation that constituted involuntary servitude due to threatened state-imposed legal coercion.

a. The Plaintiff's 2020-2021 contract, effective from August 17, 2020 – May 31, 2021, stipulated that the appointment is subject to the provisions of the "policies, rules, and regulations of the University of Maryland and the Graduate School, which can be found in the Policies for Graduate Assistantships (PGA)."

b. The PGA policy stipulated that the "Graduate Assistant's appointment may be terminated before the expiration of its designated term for loss of funding, for cause, for academic delinquency, by written notice, and by voluntary mutual agreement." It stipulates, "An appointment may be terminated by delivery of 30 days written notice to the GA."

c. The termination conditions "for cause" are broadly defined and do not specifically describe activities related to the assistantship as a sole basis for termination or disciplinary action. The policy includes "insubordination," which serves as threatened state-imposed legal coercion. It can be reasonably be assumed that objecting to a series of assignments in a required program course constituted "insubordination".

d. Another termination condition includes "Academic delinquency. An appointment may be terminated if the GA is not making satisfactory academic progress to a degree or is otherwise not in good academic standing. The termination shall be in writing and may be immediate or with such notice as the University believes compatible with the GA's academic situation, not to exceed 30 calendar days." There is no referential citation or definition of "not making satisfactory academic program" or "not in good academic standing". Given the broad nature of

this termination condition, it serves as threatened state-imposed legal coercion. It can be reasonably assumed that withdrawing or otherwise not contributing labor to the federal grant in a required course constituted "not making satisfactory academic program" or "not in good academic standing". 34 CFR § 263.3 permits institutions to rely on their own standard of good standing.

29. Once Plaintiff enrolled in the required course, he had no real choice but to performed labor demanded of him.

30. Defendants applied coercive strategies to compel Plaintiff to involuntarily provide uncompensated work:

   a. Forcing labor within a course that is a PhD program requirement for the Plaintiff.

   b. Manipulating Plaintiff through academic status as full professor to disguise the forced labor within an educational course required for academic program.

   c. Failing to disclose in syllabus that Plaintiff would be required to provide uncompensated labor on a grant which funded positions to perform tasks that Plaintiff performed during the course of the semester.

   d. Failing to provide an alternative assignment or opt-out as an alternative for forced labor on a CDC grant.

   e. Forcing labor contract wherein Plaintiff subsidized federal grant-funded work.

    f. Forcing a contract where Plaintiff provided coerced, forced labor with an unfilled promise of submitting final project for publication.

    g. Initiating a forced contract and breaching aforementioned contract wherein Plaintiff purportedly had an opportunity to submit manuscript for publication in exchange for labor.

    h. Failing to disclose the ethical and legal implications of the Plaintiff's participation in required coursework.

31. The Defendants knew and were in reckless disregard through forced labor within an educational context.

32. Plaintiff was harmed as a result of Defendants' action.

**WHEREFORE** the Plaintiff requests Judgment against the aforementioned Defendants as follows:

a) Actual, compensatory, consequential, and all other allowable damages against Defendants in an amount yet to be determined;

b) Plaintiffs' cost in this action, including reasonable attorneys' fees and costs pursuant to 18 U.S.C. § 1595;

c) Punitive damages and,

d) Other relief the Court deems just and equitable.

## COUNT II
## Violation of the Fair Labor Standards Act
## FLS, 29 U.S.C. § 203, § 207

26. The Plaintiff replead the preceding paragraphs as if fully set forth herein.

27. The Fair Labor Standards Act (FLSA) determines the circumstances that students and volunteers may not be employees and, thus, not required to be compensated for their labor. The Plaintiff did not "volunteer" to perform services for the University of Maryland – a public agency. The labor that he performed associated with a federally funded grant was forced upon him. The Plaintiff was treated as an employee with respect to the tasks that he was coerced to perform.

28. The Courts have used the "primary beneficiary test" to determine whether a student or intern is an employee under FLSA and, thus, required to be reimbursed for labor.[1] The test is only used for "for-profit" employers. The Defendant, the University of Maryland, is a not-for-profit public university.

29. FLSA required the Plaintiff to willingly volunteer his time for the grant-related activity or willingly enter into a new or revised labor contract with his employer, the University of Maryland College Park. The Plaintiff did not willingly volunteer his time for grant-related activity or willingly into a labor contact with his employer or with Bradley Boekeloo.

**WHEREFORE** the Plaintiff requests Judgment against the aforementioned Defendants as follows:

a) Actual, compensatory, consequential, and all other allowable damages against Defendants in an amount yet to be determined;

---

[1] E.g., Benjamin v. B & H Educ., Inc., --- F.3d ---, 2017 WL 6460087, at *4-5 (9th Cir. Dec. 19, 2017); Glatt v. Fox Searchlight
Pictures, Inc., 811 F.3d 528, 536-37 (2d Cir. 2016); Schumann v. Collier Anesthesia, P.A., 803 F.3d 1199, 1211-12 (11th Cir. 2015);
see also Walling v. Portland Terminal Co., 330 U.S. 148, 152-53 (1947); Solis v. Laurelbrook Sanitarium & Sch., Inc., 642 F.3d 518,
529 (6th Cir. 2011).

    b)    Plaintiffs' cost in this action, including reasonable attorneys' fees and costs pursuant to 18 U.S.C. § 1595;

    c)    Punitive damages and,

    d)    Other relief the Court deems just and equitable.

## COUNT III
## Fraud

30. Plaintiffs replead the preceding paragraphs as if fully set forth herein.

31. The Defendants misrepresented grant activities in application for a grant in violation of 42 U.S.C § 86.12 where in applications to U.S. Department of Health and Human Services grants, "shall contain a full and adequate description of the project and of the manner in which the applicant intends to conduct the project in accordance with the requirements of this subpart, and a budget and justification of the amount of grant funds requested, and such other pertinent information as the Secretary may require."

32. Coerced labor from the Plaintiff to perform grant related activities was not included in the Defendants' application and, thus, constitutes a violation of 42 § 86.12.

WHEREFORE the Plaintiff requests Judgment against the aforementioned Defendants as follows:

    a) Actual, compensatory, consequential, and all other allowable damages against Defendants in an amount yet to be determined;

    b) Plaintiffs' cost in this action, including reasonable attorneys' fees and costs pursuant to 18 U.S.C. § 1595;

    c) Punitive damages and,

    d) Other relief the Court deems just and equitable.

## COUNT IV
## Breach of Contract

33. The Plaintiff replead the preceding paragraphs as if fully set forth herein.

34. The Plaintiff entered into a series of contracts with Defendant, University of Maryland College Park, between 2019-2022 agreeing to labor with respect with an assistantship appointment in exchange for a stipend. The terms of that contact did not include any labor associated with PhD program coursework.

35. The Plaintiff fulfilled the terms of the contract and was offered and accepted contract renewals.

36. The Defendant, Bradley Boekeloo, forced an agreement wherein the Plaintiff would be able to submit his final project for publication in exchange for labor on grant activities.

37. The Defendant, University of Maryland College Park, breached the terms of the contract by obligating the Plaintiff to complete grant activities as the course was required for the PhD program.

38. The Defendant, Bradley Boekeloo, was unresponsive to the Plaintiff's request to proceed with publication following the end of the semester.

WHEREFORE the Plaintiff requests Judgment against the aforementioned Defendants as follows:

    a) Actual, compensatory, consequential, and all other allowable damages against Defendants in an amount yet to be determined;

    b) Plaintiffs' cost in this action, including reasonable attorneys' fees and costs pursuant to 18 U.S.C. § 1595;

c) Punitive damages and,

d) Other relief the Court deems just and equitable.

## COUNT V
### Infliction of Emotional Distress

39. The Plaintiff replead the preceding paragraphs as if fully set forth herein.

40. The Defendants engaged in reckless conduct by forcing the Plaintiff to provide forced labor on a federally funded grant which had purported supported all activities of the program, including funded positions for faculty, research assistants, managers, and ancillary support.

41. Through their reckless conduct, the Defendants intentionally caused or recklessly disregarded the probability of causing emotional distress in the Plaintiff who is a descendant of US enslaved families - exploited for their labor in an immoral system known as slavery.

42. The Plaintiff actually suffered severe or extreme emotional distress. He has suffered from mental health distress impacting his ability to fully devote all resources and time to his studies. The events described herein has traumatized the Plaintiff, affected his disposition, mood, concentration, and diminished his commitment to his academic studies, his program, and the University of Maryland College Park. Due to limited financial resources, he has been unable to secure clinical services needed to recover from mental health and psychological injury. The Plaintiff sought mental health services, but could not sustain the health care costs of psychological and psychiatric treatment.

43. The Defendants' actions were the actual and proximate cause of the emotional distress.

**WHEREFORE,** the Plaintiff requests Judgment against the aforementioned Defendants as follows:

a) Actual, compensatory, consequential, and all other allowable damages against Defendants in an amount yet to be determined;

b) Plaintiffs' cost in this action, including reasonable attorneys' fees and costs pursuant to 18 U.S.C. § 1595;

c) Punitive damages and,

d) Other relief the Court deems just and equitable.

## COUNT VI
### Violation of Maryland Labor and Employment Standards
### (MD Code, Labor and Employment, § 3-903)

44. The Plaintiff replead the preceding paragraphs as if fully set forth herein.

45. The Plaintiff performed work as a non-student employee and was this misclassified in violation of MD Code, Labor and Employment, § 3-903. The work in HLTH712 a) was outside of the usual course of business of the Plaintiff on behalf of the Defendant, University of Maryland College Park, b) was unrelated to the business as stipulated in the contract, and c) not integrated in the employer's operation as stipulated in the contract.

**WHEREFORE,** the Plaintiff requests Judgment against the aforementioned Defendants as follows:

a) Wages owed;

b) Plaintiffs' cost in this action, including reasonable attorneys' fees and costs pursuant to MD Cts & Jud Pro Code § 11-109 (2013);

c) Punitive damages and,

d) Other relief the Court deems just and equitable.

## COUNT VII
### Respondeat Superior

46. The Plaintiff replead the preceding paragraphs as if fully set forth herein.

47. The Defendant, University of Maryland College Park, employed Christopher Williams at all times references within the complaint.

48. Under the doctrine of respondeat superior, an employer is liable for the negligence of an employee committee while the employee is acting within the scope of his or her employment.

49. Defendant, Bradley Boekeloo, was advancing the interests of Defendant, University of Maryland College Park, with respect to each of the actions herein described.

50. Defendant, Bradley Boekeloo, was acting within the scope of his employment with respect to each of his action herein described.

51. Defendant, Bradley Boekeloo, used University of Maryland College Park's resources facilities, name, and logo with respect to each of the actions herein described.

52. Defendant University of Maryland College Park is vicariously liable for the actions of their employees, including the named defendant, Bradley Boekeloo.

### PRAYER FOR RELIEF

WHEREFORE, Christopher Williams requests that the Court enter judgment in his favor and against Defendants, and order the following relief:

a. Entry of a declaratory judgment against the Defendants University of Maryland College Park, Darryll Pines, and Bradley Boekeloo, jointly and severally, for punitive damages in the amount of Twenty-Million Dollars ($20,000,000) plus interest, costs and any and all other relied to which the Court feels him entitled.

DATED: January 11, 2022.                    Respectfully submitted,

**CHRISTOPHER M. WILLIAMS**
By /s/ Christopher M. Williams

201 I St SW Apt 526
Washington, DC 20024
Telephone: (434) 422-2161
chriswilliams06@gmail.com